Good morning. May it please the Court, Counsel. My name is Harriet Leavitt. I represent Mr. Lind. The issues that I would like to argue today are the first and the third of the materiality issue and the sentencing issue. I'd like to submit the hybrid representation issue on the brief unless the Court has a specific question regarding that. With respect to the materiality issues, as the Court knows, Mr. Lind was charged with five separate offenses, one of which was bankruptcy fraud, three of which were perjury, and the remaining charge was a money laundering charge. I argued on appeal that the government failed to prove the materiality of the false statements. The government ---- The only evidence with respect to the materiality in count one ---- I'm thinking about instruction, the instruction. The Court did instruct the jury as to materiality. But your argument then is there was not sufficient evidence? That's correct. That's correct. Now, the government has countered that the Wells case overrules the Nieder case and that materiality need not be proven, even though the government submitted instructions regarding materiality below. Does the Court wish me to address that issue now or later? The government's position that materiality need not be shown? Yes, that's what the government's position is. On any of the counts? On any of the counts, yes. I'm sure the government will disabuse us of that notion if that's not its position. But the jury has found materiality. Yes. The jury was instructed on materiality. So my issue is twofold. One, the government must prove materiality as an essential element of the offenses charged, and two, that the government did not do so. You're just arguing sufficiency of the evidence. No, I think that sufficiency of the evidence is less specific. I'm arguing an essential element was left out of the government's proof. But, okay, if you want to characterize it as sufficiency of the evidence, I'll go with that. But let me then take you through the reasons why the government failed to do that. What had happened, as the Court is aware in this case, Lins filed a Chapter 11 bankruptcy. They failed to list under any area in their schedules the interest they had in an asset that was later sold. And the Lins share of that asset was approximately $240,000. Now, the schedules do not show an interest in real property at the time the bankruptcy was filed or when the schedules were filed. The Statement of Affairs does not show an interest in the property either belonging to a corporation or reflected as a corporate asset. So it's just not there. Later, the property is sold. As I said, the Lins receive $240,000, and that gets deposited in the bank. $10,000 of it is deposited into a separate account, and $2,000 in cash is withdrawn from that. And thereafter, in filing the monthly income report, that receipt of money is not reflected. And in 1999, about a year and a half later, Mr. Lins is examined in the bankruptcy court and makes several different statements regarding his ownership of the property, which by that time had been, in fact, discovered. Now, at trial, the government had the testimony of a senior bankruptcy analyst, a Mr. Catatoni. I hope I'm not butchering his name pronunciation. He testified that the bankruptcy court or the trustee looks at the schedules in a Chapter 11 case to determine whether the reorganization plan submitted by the debtors in Chapter 11 is a feasible plan, whether it can be confirmed. However, the government never offered into evidence the plan. So we don't know how Mr. Lins' liabilities line up. We don't know the character of the debts. We don't know the priority of the creditors. We don't know how to do it. And under the record, we can't tell whether or not he was insolvent when he filed? Correct. Correct. What you have and what you only have is on the summary of schedules, you have the liabilities summarized and you have the assets summarized. Then you have, I believe, the excerpts of the record that the government filed have Schedule I. It does have the schedule of creditors holding unsecured claims, priority claims, and secured claims. So, yes, we have the schedules. We have the schedules, but we don't have the plan telling how those creditors were to be treated. And this is a reorganization. Let me ask you this. What's your best case authority for the proposition that materiality requires a showing of the relationship between the plan and the schedule? I was not able to find any case that addressed that issue, Your Honor. However, what we have is the facts that the bankruptcy analyst testified that it's important to look at the And he specifically said that what they want to know is whether the creditors would receive more money under a Chapter 7 liquidation as opposed to the reorganization plan. Did that witness testify that it was important to know what all the assets of the debtor are? Yes. Yes, he did. Wouldn't that be material then? Well, sure, that would be material. But we don't know what the bankruptcy plan was, and we have testimony that Mr. Lind intended to pay all of the creditors. What difference does it make if we don't have the plan if the witness says the fact of the assets is material in and of itself? He didn't use that terminology. Important materials. Okay. He said we need to look at the schedules to determine whether the creditors would be paid more money under the plan or under a total liquidation. Now, if you don't have the plan and you don't know how the creditors were going to be paid, in this case, my understanding is he owed a substantial amount of money to the Internal Revenue Service. So you don't know without looking at the plan how the Internal Revenue Service was to be paid and how the other creditors were to stack up in light of the priority that the IRS had. You know, potentially, could the IRS have just seized that $240,000 outright and said, okay, we plunk that down for our debt in its entirety and everybody else can go away? Does the bankruptcy plan make it more feasible that everybody gets paid over time? And isn't that a better plan? So we don't know and we can't speculate as to that. Counsel, is it your argument that no reasonable juror in the light of the testimony that you've just discussed could find the existence of a substantial asset to be material? Are you saying no reasonable juror could make that inference? I am saying that in the context of this case where his liabilities were nearly $2 million by 1999, the existence of this asset was not nearly as substantial and that the government ---- What about at the time he failed to disclose it, though? In other words, at the initiation of the bankruptcy, that may have made him solvent on paper. Well, you don't know that because at the initiation of the bankruptcy, the property was tied up. And we don't know when the property was placed on the market. We have no information as to whether he was anticipating a sale of that property so near in time to his filing. But, counsel, that's why it was so important for it to be disclosed, so the trustee would know what the assets were and what the estate contained. Well, Your Honor, I agree with you that debtors should fully disclose all of their assets. But I am arguing that in the context of this case, the government's reliance on a figure of $240,000 is, you know, it's a figure that most people don't see in one chunk in their lifetime. And that's why the jurors, I think, grabbed onto it and said, yeah, sure, that makes a big difference. But in this case, considering that all of the creditors were to have been paid, and that over a period of time, his liabilities increased from a million and a half to 2 million, that it's not nearly as significant as it would otherwise have been. And I also suggest that the time at which you look at materiality, isn't it at the time he doesn't disclose? Well, at the time he didn't disclose, if you want to use it that way, then the property really didn't have any substantial value because it had not been sold. But he had paid. He knew he owned it. He knew he owned it. He knew that he owned it, but he had paid $90,000 for it in 1994, and there was a $50,000 encumbrance. He had a 40 percent interest in that. So what is that? Maybe $15,000, $20,000, less than $20,000? To make that kind of a mental adjustment in your mind and think, well, it's only $15,000, $20,000, I don't need to disclose it. Your Honor, I'm not going to speculate on his mental processes, and I'm not going to suggest to the Court that a debtor should not disclose. I am suggesting to the Court that once the nondisclosure is found, you have to show the materiality. I want to specifically discuss materiality with respect to the false testimony before the bankruptcy court, because in that count, the questioning was basically as to his ownership of the property or as to which entity he claimed the property was owned by. Now, the government introduced into evidence a statement that he was real aware at the time he filed the bankruptcy that he was the record owner of the property, and he said yes. And in another portion of the testimony, he stated that his sub-S corporation, Lynd Jensen, was actually the owner. Now, here's a situation where they knew that this is a sub-S corporation. They knew that he's the sole stockholder of the corporation. They knew that the corporation was essentially his alter ego. So as to that count, what's the materiality of it as to whether he designates it in one entity or as to another entity? And I submit to the Court that by that point in time, it did not matter which entity it was, and they already knew that he was the record owner. So his characterization of which corporate entity really owned it is totally immaterial, and there should not have been a conviction on that. And as to that, I must say to the Court, no reasonable juror could have found otherwise, and yet they did. I'd like to spend a little bit of time talking about the sentencing issues. Now, at the time that I filed the briefs, the Booker-Fan-Fan case had not been issued. The arguments that I raised were under Blakeley and Ameline. However, I think that Booker-Fan-Fan also applies. And in the event this Court elects to uphold any of the convictions, I submit that Mr. Lind would be entitled to a new hearing for sentencing. First of all, what's required there is an Ameline remand, isn't it? Yes. Limited remand. Excuse me? Limited remand. When you say limited remand, could you clarify? Don't vacate the sentence. Well, I think that the court, the district court should be given the opportunity to decide whether to reduce that sentence. That's a limited remand. Okay. And what I might point out with regard to that issue is that, as the Court is well aware, this offense or these offenses do not carry a minimum mandatory sentence. So the court, by statute, could have given Mr. Lind far less than the guideline amount. Now, as I've mentioned in the brief, I take issue with some of the factors that were used for enhancement in the guidelines. Counsel, your time probably would be better served addressing your other issues, because if we decide to do a remand to the district court, it will be totally up to the district court to decide how to address the sentencing matters. All right. In that case, thank you for pointing that out, Judge Rawlinson. If the Court has any questions to ask of me regarding the other issues, I would appreciate it. No. Maybe you can save your time for rebuttal. I shall do that, then. Thank you. All right. Thank you. Good morning, and may it please the Court. I'm Bob Miskell from the U.S. Attorney's Office in Tucson on behalf of the United  Did you try this case? Yes, I did. On the materiality issues, maybe to get actually what we're dealing with, count one in the indictment did not allege in the injuring instructions given by the Court did not require the government to prove materiality as to count one. There is no Ninth Circuit case that requires, that holds the materiality as an element of that content. You don't need to discuss that, do we? I don't think we need to discuss that one. Good. Counts two and three, the indictment did allege in the injuring instructions given struck the Court the materiality was an element following Ninth Circuit law and still currently in effect. And count five, there's no question materiality is an element of that crime. The Wells case does suggest that materiality is not an element of the crime charged in the case. It's not. I don't think it's a practical matter. It does not make a difference because the evidence in the case. There is a sufficiency of the evidence to prove in all of those counts. Well, can't you address that, though? Sure. I can address that. And you're as strong on one as you are on the other counts, aren't you? Yes. I mean, there was evidence of materiality all the time. Friendly question. Okay. The evidence of materiality for all of the counts was extremely strong. Basically, what we had in this case was an asset worth about a quarter of a million dollars that was not disclosed. The jury was instructed that for something correctly instructed for an item to be material, all it had to have was the capacity to influence the decision-maker. The government didn't need to prove that it actually influenced the decision-maker, just that it was capable of influencing the decision-maker. And clearly, an asset of that value was material. Specifically, defendant Ms. Leavitt talked about count 5, where the false testimony  The defendant was claiming in the bankruptcy proceeding that one of his corporate entities owned the property. If, in fact, that testimony were true, that asset would not be part of the bankruptcy estate and would not be subject to the bankruptcy jurisdiction, basically. And that's why it was material, because, in fact, as the government proved in trial, he owned that property as an individual. It was not a corporate asset. And since he owned it as an individual, when he as an individual declared bankruptcy, it was something that needed to be disclosed so it would be available for his creditors. So looking at the evidence in the light most favorable to the government, materiality was proven on all of the counts, whether the government needed to or whether it's an element or not. The government proved it, as the government probably would do in any count involving any kind of false statement. Now, your opponent takes issue, builds a lot of her argument around the fact that the plan itself was not in the record. And the government's expert testified as to what use is made of the schedules, et cetera, but did not relate that to the plan. I guess basically maybe it's relevance, that all that stuff isn't relevant unless the plan comes into play and you show how this asset, nondisclosed asset, would have affected the plan and how it went into effect. Can you address that? Sure. I don't think the government did not need to introduce the plan into evidence for the jury to make a determination that the failure to disclose an asset worth almost a quarter million dollars was material. What the government introduced, the evidence the government introduced was sufficient for the jury to make that finding. In other words, the jury was given testimony, provided evidence that explained how these bankruptcy forms, the information, was in a general way used by both the bankruptcy court and the United States trustee's office. By giving the jury that information, the jury had the information to make their own determination about whether failing to disclose an asset worth that amount of money would be material. Conversely, the jury could have come at it the other way and looked at it as whether it was material or not for the defendant to wrongfully keep as his own an asset worth $240,000 that should have belonged to the bankruptcy estate. Either way you look at it, it was material based on the information the government presented. The government did not need to show to prove materiality. The government did not need to show the, you know, to the dollar it sent, the impact it had on his bankruptcy plan. All the government needed to show, and as the jury was instructed, was that the false item was capable of influencing the decision-maker. And the jury was given the background information to make that determination. We don't have to, again, as I said, we don't have to prove that they were actually influenced, just that the false statement was capable of influencing them. Counsel, specifically, what testimony of the government's witness, in your view, supported the finding of materiality? I think it would be primarily the testimony of the Mr. Catatoni from the U.S. Trustee's office. And what his testimony was, was essentially a description, in admittedly general terms, of how the bankruptcy proceeding works in the Chapter 11 proceeding, and including the testimony that the information on the documents was used and was important to both the court and the trustees in evaluating the bankruptcy reorganization plan. Do you equate the use of the term important with material? Yes, I do. And what case authority are you relying upon to support that equation? As far as that specific equation, I don't know of a case that says important equals materiality, but there are numerous Ninth Circuit cases, or several anyway, that say in a bankruptcy false statement case, matters relating to the extent and nature of a bankrupt's assets are material. And I'm specifically referring to the Lindholm case. So that case says, and it makes sense, the extent and nature of a bankrupt's assets is basically the key issue in a bankruptcy case. So any misstatement in that area would be material. What about your opponent's argument that at the time, I take it, of filing, this was a failure of any defined value because he had bought it three or four years before and owed a bunch of money on it, I take it. And so therefore, there was really nothing to disclose, I guess, or if there was a failure, it was de minimis. I don't know quite what the argument was. But would you address the timing of the disclosure versus the timing of when the value was determined? Okay. Let's see. Excuse me just one second. The bankruptcy petition was filed in January 1997. And the property was sold in June of 2001. So you're talking a four-year time frame. But even in 1997, you cannot, it cannot be plausibly unlawful. I would argue that the property had no value. The property clearly had value. Whether it could have been determined as specifically as it was because of the subsequent sale doesn't mean that the property did not have value and the property should have been disclosed. To the extent the property also had a debt connected, what if the debt should have been disclosed? All of those factors would have played into whether it was material to whether the defendant's bankruptcy reorganization was plausible. And, in fact, the defendant himself, when he was being cross-examined during the criminal trial, conceded that the property needs to be reported so that the people connected with the bankruptcy proceeding can make a fair evaluation. So the timing of it does not impact the fact that it had value. And it had value at the time the bankruptcy was filed. In a reorganization case, can the court probably at the instance of the trustee order an asset sold in order to put cash into the reorganization? I don't know how it would work with a jointly, when an asset is held by a party unrelated to the bankruptcy proceeding. I'm not sure how that would work, quite frankly. But it clearly had value that needed and it needed to be disclosed. I don't think anybody can honestly dispute that. Counsel, would you please point out for me in the Lindum case what language you're using for the assertion that value to disclose assets in the estate would be material? Sure. And it's in the Lindholm at 24F3rd at page 1083. Okay. Would you tell me the specific language that addresses assets in there? When it's discussing what is encompassed within the scope of materiality, it says includes, one, matters relating to the extent and nature of a bank's or up's  Where is that? It's in a list of like five factors. What page are you on? 1083. And, number, the first factor as far as items that are within the scope of materiality, I mean, matters relating to the extent and nature of a bankrupt's asset. I just don't see that in that. 24F3rd at 1078. The Lindholm case is 24F3rd at 1078. I'm specifically referring to page 1083. Right. And which head note are you on? I don't have that with me. But it is, it's a listing of in discussing materiality, there are five factors listed. The first one is matters relating to the extent and nature of bankrupt's assets. The second is inquiries relating to the bankrupt's business transactions. I see it. I see it. Head note 4. Thank you. So in light of the Ninth Circuit law that that, the asset is a material matter, the evidence was sufficient in this case for the jury to make that conclusion. I just want to briefly address the sentencing issue. In this case, unlike the situation in the Court's recent en banc opinion in Ammohine, there was no Sixth Amendment error in this sentencing. Every factor that the Court used to impose sentence and calculate the defendant's sentencing guidelines was premised or based on a finding made by the jury in arriving at their verdict. So there is, under this, in this case, there is no Sixth Amendment error. What, did the jury make a finding on the enhancement based on the defendants knowing that the funds were the proceeds of unlawful activity? Yes, they did, actually. The way the judge instructed them on the elements, they necessarily made that factual finding. And what I'm referring to is the jury was instructed that to find the defendant guilty, they had to find, as elements 2 and 3 of the elements of the offense, that the money from the financial transaction, quote, derived from the knowing and fraudulent consumption of property from creditors as alleged in count 1 of the indictment, and that the defendant knew the monetary transaction involved criminally derived property. So by finding the elements of that crime, they made the factual finding that supported that sentencing adjustment. Did the jury make a finding regarding the amount of the funds that were involved? The jury was instructed as to count 1 or, excuse me, count 4, as to element 1, that they had to conclude that owner about June, and I'm quoting again from the jury instruction, owner about June 30th, 1997, the dependent knowingly deposited $220,382.58 in monetary instruments to a financial institution. That's how the court framed the element of the offense that the jury had to find. By finding that element beyond a reasonable doubt, the jury found that the value of the funds exceeded $100,000. What was the enhancement based on, the court's enhancement of the sentence? At sentencing, there were three enhancements from the base offense level. But, I mean, in correlation to that instruction that you just read, what was the enhancement? Two points were added because the value of the under the guidelines, because the value of the funds exceeded $100,000. Okay. And then on the obstruction. The obstruction was the obstruction enhancement was based on the fact that the jury found the dependent guilty of count five of the indictment, which was the perjury at the bankruptcy court trial. But a perjury does not necessarily, or does not necessarily, a finding of perjury would not necessarily mean an enhancement on the basis of obstruction by the jury, would it? Two years later. Yes. I think it, and I think the guidelines actually say that, because there was a conviction for perjury in this case. And the guidelines say, well, the guidelines aren't mandatory anymore, so. What would be wrong with sending this back to the legislative court to take a fresh look at it? In the government's view, that would not be necessary because there was no Sixth Amendment error. Well, we're doing a plain error analysis under Ameline. Right. And even if you're looking at it as plain error, because there weren't, there was no objection made, because there was no Sixth Amendment error, the government's position would be. Well, there was a Sixth Amendment error because the district court made, well, you're saying the jury made the findings. Correct. Oh, you're saying the judge didn't make any findings. Every enhancement the court and every adjustment the court made to the guidelines was based on facts found by the jury beyond a reasonable doubt. But the court didn't express it that way, did it? No. When they're making the enhancements, the court didn't say because the jury found this, because the jury found that. The court made its own findings, which is the Sixth Amendment problem if the court makes findings, rather than relying on the findings made by the jury. The only error at sentencing in this case, in light of current law, was the court was operating under the assumption that the guidelines were made by the jury. And that's a fan-fan. Yes. And that's an error, whether it's plain error or not. You know that? Counsel, ordinarily, obstruction of justice in the trial court's enhancement is because of perjurious testimony in the trial itself. In this case, the testimony was two years prior to the criminal trial. Doesn't that require some fact-finding by the trial court, other than what the jury found? I think so. But that's the problem. Okay. I had a question along the same line. If the charge is perjury, that will give you a sentencing level. Just that conviction will give you a certain starting point. And then to say that that same conduct is obstruction of justice seems to me to require the district court to go one step further than the mere fact of the conviction. In this case, the way the guidelines played out is actually the guideline for count four, the money-laundering count, was the guideline that controlled the sentencing, actually, because that was the highest guideline level. So if you look at the guideline for the money-laundering count, I don't think you could – it would not be double counting to impose the obstruction of justice enhancement to that guideline calculation. That wouldn't be based on the jury verdict, then, would it? Well, it would be based on the jury's finding that the defendant lied as they found in count five of the indictment. And that's how the pre-sentence report laid it out, basically. That the enhancement was based on the fact that the jury found the defendant guilty as to count five. And at sentencing, the defense counsel himself conceded that he didn't file objections to the pre-sentence report because the sentencing adjustments in the pre-sentence report, quote, tracked the verdicts. So I think it's fair to say that the judge said. What did the judge say when he imposed the sentence with the enhancements? Did he just adopt the pre-sentence report? He adopted the pre-sentence report. As I said, there were no objections filed. Right. So he adopted the pre-sentence report. The Court mentioned – the Court did mention that he looked for and found no basis for departure and imposed the sentence at the low end of the guideline range. I understand your argument. Okay. Unless the Court has any further questions. It appears not. Thank you. Rebuttal. I need to correct Mr. Miskell on two important matters. First, with respect to count five, counsel advised the Court that the perjury was significant because if the property belonged in the corporation, then it wasn't part of the bankrupt estate. And that's not true. Under the bankruptcy law, a debtor's interest in a corporate – in a corporation becomes part of the bankruptcy estate. And specifically, question 12 on the Schedule B requires the debtor to list his or her interest in any corporation and the value of that interest. Additionally, Statement of Affairs, question 18, requires the debtor to advise whether they are involved in any kind of business organization and what their license is, what the name is that they operate under, what are the assets of their – there are other areas in Schedule B which require the debtor to list what kind of items they have for conducting their business or trade. So all of that becomes part of the bankrupt estate. And that is why I am saying, as I've said earlier, that when Mr. Lynn testified before the bankruptcy court that the property really belonged in one of his corporations, that is not a material misstatement. Obviously, you look at the deed. It's got him and his wife on there as community property. But it was not a material misstatement because regardless of the ownership entity, whether it was a personal ownership or a corporate ownership, it's still part of the bankrupt estate and subject to seizure and disposition by the court. Now, the other misstatement that Mr. Miskell made, and I know that this was nonintentional, was he misstated inadvertently the date this property was sold. The property had been purchased in 1994, as I stated, for approximately $90,000. There was a $50,000 encumbrance. And the Lynn's owned as community property a 40 percent interest in the property. That was what they had at the time they filed the bankruptcy. Mr. Miskell misstated the date the property was sold. He said it was sold in 2001. That's when the indictment issued. The property was actually sold in June of 1997, the same year that the Lynn's filed the bankruptcy. So I just wanted to correct the record on that. However, at the time of filing the bankruptcy, as Judge Nelson pointed out, they owned a 40 percent interest with somebody else, and there was an encumbrance on the property. And while the bankruptcy trustee could conceivably seize the debtor's interest in that property, I submit that given the encumbrance on it and the 60 percent ownership interest by somebody else, it would have been very difficult to have forced a sale at that time. So at that point in time, when the schedules were filed in February of 1997, that lie of omission was also immaterial. Additionally, with respect to the sentencing issues that the Court addressed, I'd like to point out that the jury never answered any specific interrogatory with respect to the enhancements that later appeared in the presentence report. And Mr. Miskell argued to the Court earlier that the obstruction of justice enhancement is based on the conviction under Count 5. And as I have just noted, that perjury statement was not material to anything. And because the government is relying on that, that enhancement must fall at this point in time. Kennedy. Our ruling says that the sentencing court can rely on factual statements in the PSR which are not objected to. Would these fall within that statement? Well, I don't think so, because I think that these add a new element to the offenses charge. And I think that under Blakely and certainly under Booker Fan Fan, there needs to be reconsideration. I will agree that the better practice would have been to have objected at that time. And I will note for the record that after the Blakely decision and the Ameline decision were entered, I was already appellate attorney at that time, and I filed a motion for resentencing, which was denied based on lack of jurisdiction since the So there was an issue raised as to that. It may have not been at the best timing, but I got in there and I did not try this case. But the whole issue, the whole question of what facts the district court has before it at the time of sentencing has undergone a sea change, as you pointed out. Yes, it has. And under Ameline, you can look at, say there's a plea agreement. The statements in the plea agreement can be taken by the district court as facts, and unobjected to statements in the pre-sentence report can be taken as facts. So to that extent, what you might derive from Blakely really doesn't obtain anymore, does it? Well, I think it does, because as the Court itself pointed out, the obstruction of justice is not necessarily an element of that perjury on count 5. And similarly, the amount of money that was placed on deposit in a bank is not necessarily an element of the money laundering charge. The jury could have found that the money laundering actually occurred when he deposited $10,000 of that money into his personal account and took out 2,000 in cash and put it in his pocket. For sentencing purposes, it's not now as important what the jury found as it is what the court finds. And if the court can look at the facts that it can consider and finds that it's 220,000, why isn't that what you look at for purposes of sentencing? Because there was an enhancement of two points to the base offense level based on that specific amount. And the analogy that I can think of is that what you do with fact-finding that's sentencing. I think that on those types of situations, what is appropriate is to give the jury an interrogatory and let the jury make the specific fact-finding. Ameline, you don't have to do that. In other words, the jury has done its thing. And you're now before the Court for sentencing. And the question is, what facts can the Court consider? Ameline says the plea agreement, if there is one, and the pre-sentence report and all the facts which are not objected to can be used by the district court. So you don't care at that point what the jury said. But the pre-sentence report, Your Honor, came out before Ameline. I don't know that that really matters. I mean, we hold lawyers to, you know, great ideas that they can see the future, and judges too. Well, I don't know about that, because every time I've argued ineffective assistance of counsel for not foreseeing that this is what the law should be in making the argument, I've been told lawyers aren't supposed to foresee changes in the law. And Ameline was a pretty significant change in the law, Your Honor. And I submit that given the, you know, the churning of the law in this whole area, that trial counsel should be given a break here and that the defendant should not be precluded from raising that issue now. All right. Thank you, counsel. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the Court. And the final case on calendar for argument is Dunlap v. Stewart.
judges: Reavley, T.G. Nelson, Rawlinson